642 S.E.2d 744

Janice W. VAUGHAN, as Personal Representative of the Estate of Charles G. Vaughan, Jr., Appellant,

v.

McLEOD REGIONAL MEDICAL CENTER, Theresa Gallagher, M.D., and Thomas Wilson, M.D., Defendants,

Of Whom McLeod Regional Medical Center and Thomas Wilson, M.D. are Respondents.

No. 26285.

Supreme Court of South Carolina.

Heard Jan. 31, 2007.

Decided March 12, 2007.

Stephanie P. McDonald, of Senn, McDonald & Leinbach, LLC, of Charleston; and Mahlon E. Padgett, IV, of Padgett Law Office, of Bennettsville, for Appellant.

J. Boone Aiken, III, of Aiken, Bridges, Nunn, Elliott & Tyler, P.A., of Florence, for Respondents.

Justice BURNETT.

Janice W. Vaughan, as Personal Representative of the Estate of Charles G. Vaughan, Jr., (Appellant) appeals the circuit court's grant of summary judgment in favor of McLeod Regional Medical Center and Thomas Wilson, M.D. (collectively referred to as Respondents). We certified the appeal from the Court of Appeals pursuant to Rule 204(b), SCACR, and we affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

On November 4, 2000, Charles G. Vaughan, Jr. (Decedent) was treated at McLeod Regional Medical Center for injuries arising out of an automobile accident. Upon admission, Dr. Wilson noted Decedent had an elevated blood alcohol level, and Decedent was detoxed by Dr. Theresa Gallagher during his hospitalization.

On November 22, 2000, Appellant, who was Decedent's wife, and Decedent's adult daughter filed a petition for the appointment of a guardian for Decedent in the Marlboro County Probate Court. Appellant also petitioned for the appointment of a conservator for Decedent. On the same day, Judge P. Mark Heath appointed Dr. Wilson and Dr. Gallagher to examine Decedent and to report their findings regarding Decedent's mental capacity to the probate court, as required by S.C.Code Ann. § 62–5–303 (1987). At a hearing that day, Judge Heath heard testimony from Appellant and received the court-ordered reports from Dr. Wilson and Dr. Gallagher. The doctors described Decedent as a chronic alcoholic with dementia secondary to alcohol abuse. Both doctors found Decedent was an "incapacitated person" [1] and was impaired by

---

1. "Incapacitated person" is statutorily defined to mean "any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxi-

reason of mental deficiency, physical illness or disability, and chronic intoxication. Dr. Wilson and Dr. Gallagher further found this condition to be permanent. Based on the evidence, Judge Heath found Decedent was incapacitated. He appointed guardians, a conservator, and an attorney with the powers and duties of a guardian ad litem for Decedent. On January 31, 2001, Judge Heath signed an order declaring that Decedent was no longer incapacitated.[2]

Appellant subsequently brought this action against Respondents[3] alleging, among other things, Dr. Wilson and Dr. Gallagher negligently and erroneously informed her and the Marlboro County Probate Court that Decedent was permanently incapacitated. On Respondents' motion for summary judgment, the circuit court granted summary judgment in favor of Respondents.

## ISSUE

Did the circuit court err in granting summary judgment in favor of Respondents?

## STANDARD OF REVIEW

A circuit court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). In determining whether any triable issues of fact exist, the circuit court must view the evidence and all reason-

---

cation, or other cause (except minority) to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person or property." S.C.Code Ann. § 62-5-101(1) (Supp.2006).

**2.** We note we placed Decedent, an attorney licensed to practice in this State, on incapacity inactive status on December 7, 2000 and we reinstated him to active status on January 22, 2003.

**3.** Although Dr. Gallagher was originally named as a defendant, she is not a party to this appeal.

able inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn,* 294 S.C. 383, 385, 365 S.E.2d 24, 25 (1988). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

The issue of interpretation of a statute is a question of law for the court. *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) ("The determination of legislative intent is a matter of law."). We are free to decide a question of law with no particular deference to the circuit court. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000).

### *LAW/ANALYSIS*

### A. S.C.Code Ann. § 44-66-70(A)

Appellant argues the circuit court erred in finding Respondents were not subject to civil liability pursuant to S.C.Code Ann. § 44-66-70(A) (2002). During oral argument before this Court, Respondents conceded the circuit court erred in granting summary judgment on this ground.

South Carolina Code Ann. § 44-66-70(A) provides: "A person who in good faith makes a health care decision as provided in Section 44-66-30 is not subject to civil or criminal liability on account of the substance of the decision." Section 44-66-30 (2002) sets forth a prioritized list of persons who may make health care decisions for a patient who is unable to consent. Specifically, § 44-66-30(A)(3) gives priority to "a person given priority to make health care decisions for the patient by another statutory provision."

The circuit court determined § 44-66-30(A)(3) allows a person to make health care decisions for a patient unable to consent when priority is given by another statutory provision. The circuit court then held S.C.Code Ann. § 62-5-303 gave Dr. Wilson priority to make the health care decision that Decedent was permanently incapacitated. Finding the record was devoid of any evidence that Dr. Wilson did not act in good

faith, the circuit court granted summary judgment to Respondents based on the immunity provided by § 44–66–70(A).

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). If a statute's language is plain, unambiguous, and conveys a clear meaning, then "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

Section 44–66–70(A) gives immunity to a person who in good faith makes a health care decision pursuant to § 44–66–30 for a patient who is unable to consent. Section 44–66–30(A)(3) allows a person to make health care decisions for a patient who is unable to consent when priority is given by another statutory provision. Section 62–5–303 clearly is not another statutory provision that gives priority because § 62–5–303 sets forth the requirements for court appointment of a guardian upon a finding of incapacity.[4] *See Timmons v. S.C. Tricentennial Com'n,* 254 S.C. 378, 402, 175 S.E.2d 805, 817 (1970) ("[W]here the language [of a statute] is clear and explicit, the courts cannot rewrite the statute and inject matters into the statute which are not in the legislature's language.").

The circuit court improperly construed § 62–5–303 to be another statutory provision giving priority as referenced by § 44–60–30(A)(3). Thus, the circuit court erred in applying the good faith immunity, provided by § 44–66–70(A) for persons who make health care decisions under § 44–66–30, to Dr. Wilson's decisions pursuant to court appointment under § 62–5–303. Furthermore, Dr. Wilson did not make any health

---

4. South Carolina Code Ann. § 62–5–303(b) requires, in relevant part, that once a petition for guardianship is filed, "[t]he person alleged to be incapacitated shall be examined by two examiners, one of whom shall be a physician appointed by the court[,] who shall submit their reports in writing to the court."

care decisions[5] pursuant to § 44–66–30 for Decedent. Dr. Wilson *provided* health care to Decedent by diagnosing, treating, and caring for Decedent during his hospitalization, and he performed a court-ordered examination of Decedent. Therefore, the circuit court erred in applying the good faith immunity provided by § 44–66–70(A) to Dr. Wilson's actions during Decedent's hospitalization and pursuant to his court appointment.

## B. Common–Law Immunity

Respondents argue the grant of summary judgment in their favor should be affirmed on the ground of common-law immunity. We agree. *See* Rule 220(c), SCACR (appellate court may affirm for any reason appearing in the record).

The issue of whether common-law immunity extends to a physician, who is court-appointed to serve as an examiner of an allegedly incapacitated person in a guardianship proceeding, is analogous to the issue of whether common-law immunity extends to a private person, who is court-appointed to serve as a guardian ad litem in a private child custody proceeding. For that reason, this Court's analysis of the latter issue in *Fleming v. Asbill,* 326 S.C. 49, 483 S.E.2d 751 (1997) is instructive. In finding common-law immunity applied to court-appointed guardians ad litem for actions within the scope of their appointment, the *Fleming* Court explained:

> In addition to preserving the independence and neutrality of the guardian ad litem, a grant of immunity also is reasonable in light of the fact that many court-appointed guardians have not volunteered for the position. It is inequitable for persons who did not ask to be appointed as guardian to be exposed to unlimited liability.
>
> . . .
>
> Because one of the guardian's roles is to act as a representative of the court, and because this role can only be fulfilled

---

**5.** *See* S.C.Code Ann. § 44–66–20(1) (2002) (defining "[h]ealth care" to mean: "a procedure to diagnose or treat a human disease, ailment, defect, abnormality, or complaint, whether of a physical or mental origin. It also includes the provision of intermediate or skilled nursing care; services for the rehabilitation of injured, disabled, or sick persons; and the placement in or removal from a facility that provides these forms of care").

if the guardian is not exposed to a constant threat of lawsuits from disgruntled parties, a finding of quasi-judicial immunity is necessary. Such a grant of immunity is crucial in order for guardians to properly discharge their duties. The immunity to which guardians ad litem are entitled is an absolute quasi-judicial immunity.

326 S.C. at 56–57, 483 S.E.2d at 755–56.

■ We find the reasoning that supports a finding of absolute quasi-judicial immunity for court-appointed guardians also supports a finding of absolute quasi-judicial immunity for court-appointed examiners in guardianship proceedings. Court-appointed examiners are essentially an arm of the judiciary. *See generally Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96, 108 (1983) ("[T]he common law provided absolute immunity from subsequent damages liability for all persons-governmental or otherwise-who were integral parts of the judicial process."); *Hartline v. Clary,* 141 F.Supp. 151, 152 (E.D.S.C.1956) ("[J]udicial officers, quasi judicial officers, judges, prosecuting attorneys, executive and ministerial officials of the government are immune from civil suit for acts committed by them in the performance of their official duties."); 70 C.J.S. *Physicians and Surgeons* § 101 (2005) ("A psychiatrist or other mental health practitioner appointed by the court to make a psychiatric evaluation of a person or to give an opinion as to his or her sanity enjoys immunity from suit for damages based on such opinion or evaluation, where he or she has acted in accordance with the governing statute."). Additionally, quasi-judicial immunity for acts performed within the scope of appointment is necessary to protect the court-appointed examiners from lawsuits by allegedly incapacitated persons who are upset by the results of the guardianship proceedings. If court-appointed examiners in guardianship proceedings are not afforded immunity, the exposure to liability will have a chilling effect on future acceptances of such appointments. We hold a physician, who is a court-appointed examiner in a guardianship proceeding, has absolute quasi-judicial immunity for actions and opinions within the scope of the appointment.[6]

---

6. Other courts have extended immunity to physicians who are court-appointed for actions within the scope of their appointment. *See*

██ We must determine from the nature of Dr. Wilson's actions, not merely by his status as a court-appointed examiner, whether the absolute quasi-judicial immunity extends to the challenged acts in this case. *See generally Falk v. Sadler*, 341 S.C. 281, 288, 533 S.E.2d 350, 353–54 (Ct.App.2000) ("It is the nature of the acts, not simply the status of the defendant as a guardian ad litem, that determines the availability of immunity for the challenged acts and the extent of protection afforded by that immunity."). Appellant does not dispute Decedent was temporarily incapacitated. Appellant alleges Dr. Wilson failed to properly diagnose Decedent's true condition and made an erroneous diagnosis of Decedent's condition. These allegations are based on Appellant's unhappiness with the doctor's finding of permanent incapacity. This type of allegation is precisely why absolute quasi-judicial immunity must be extended to court-appointed examiners in guardianship proceedings. Dr. Wilson's opinion that Decedent was permanently incapacitated was made within the scope of his court appointment; thus, he was protected from civil liability by absolute quasi-judicial immunity. *See generally id.* at 288, 533 S.E.2d at 354 ("A recommendation by the guardian ad

---

*Bartlett v. Weimer*, 268 F.2d 860 (7th Cir.1959) (determining court-appointed doctor, who opined that plaintiff was mentally incompetent, was acting as an officer of state probate court in giving opinion as to mental health of plaintiff, and thus, doctor was protected by quasi-judicial immunity); *Cawthon v. Coffer*, 264 So.2d 873 (Fla.Dist.Ct.App. 1972) (concluding psychiatrists who were appointed by the court to determine plaintiff's mental and physical condition were immune from suit by plaintiff for conduct within scope of appointment); *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173 (1981) (holding court-appointed psychiatrists were acting as arms of court in rendering an opinion on criminal defendant's competency, and thus, court-appointed psychiatrists were protected from suit by absolute judicial immunity); *Linder v. Foster*, 209 Minn. 43, 295 N.W. 299 (1940) (holding a physician, who was a court-appointed examiner in an insanity proceeding, was a quasi-judicial officer, and as a quasi-judicial officer was immune from civil action for acts performed in connection with the court appointment); *Mullen v. McKnelly*, 693 S.W.2d 837, 838 (Mo.Ct.App.1985) ("When a physician has been appointed to examine a person and give an opinion as to the mental health of said person the physician enjoys the same immunity extended to judges and other judicial officers."); *Bailey v. McGill*, 247 N.C. 286, 100 S.E.2d 860 (1957) (holding court-appointed physicians, who were required to examine a patient and certify an opinion regarding the patient's mental competency, were immune from tort liability for actions arising out of their appointment).

litem, no matter how disagreeable to one of the parties, will not sustain an action against the guardian of this sort."); *Bailey,* 100 S.E.2d at 867 ("Physicians, who are witnesses, in judicial proceedings to commit an alleged mentally disordered person for confinement, have been accorded such absolute immunity from civil liability for their material and pertinent affidavits, certificates and testimony."). Accordingly, Respondents are entitled to summary judgment as a matter of law.

### *CONCLUSION*

Because absolute quasi-judicial immunity protects the challenged acts and opinions of Dr. Wilson in this case, we affirm as modified the grant of summary judgment in favor of Respondents.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.