650 S.E.2d 465

Carol S. STRICKLAND, Appellant/Respondent,

v.

Krom STRICKLAND, Respondent/Appellant.

No. 26375.

Supreme Court of South Carolina.

Heard May 1, 2007.
Decided Aug. 27, 2007.

78

80

S. Bryan Doby, of Jennings & Jennings, of Bishopville, for Appellant/Respondent.

Paul M. Fata, of Stuckey, Fata & Segars, of Bishopville, for Respondent/Appellant.

Chief Justice TOAL.

This case began as an action to enforce an alimony award. The family court dismissed the claim finding it was barred by the doctrine of laches. We affirm, but modify the family court's decision and we additionally vacate a portion of the family court's decision.

## FACTUAL/PROCEDURAL BACKGROUND

Upon the parties' divorce in April 1988, the family court awarded $1200 per month in permanent periodic alimony to Appellant/Respondent Carol Strickland ("Wife") to be paid by Respondent/Appellant Krom Strickland ("Husband"). This monthly total was increased by $200 in November 1990 after the family court held Husband in contempt of court for failing to remain current on his alimony obligation. In May 1992, the parties signed a consent order providing that instead of making payments to the county clerk of court, all further alimony would be paid directly to Wife, and any arrears would be "worked out between the parties."

From November 1990 until December 1997, Husband paid Wife $300 per month in alimony payments. During this time, Wife did not object to Husband's failure to pay the full amount awarded by the court. In July 1998, Husband made a one-time payment of $500 (at Wife's request). After this, Husband made no further payments to Wife and Wife made no additional requests for alimony until December 2004 when her lawyer contacted Husband to discuss "a deficient alimony claim."

In May 2005, Wife initiated an action seeking enforcement of the $1200 per month alimony obligation and approximately $225,000 in past due alimony. As an affirmative defense, Husband argued the doctrine of laches barred Wife's claim for past due alimony and, as a counterclaim, alleged that Wife had continuously cohabitated with another man for seven years and was therefore no longer entitled to ongoing alimony under

S.C.Code Ann. § 20–3–150 (Supp.2006) (the "continued cohabitation" statute).

The family court agreed with Husband and dismissed Wife's complaint, holding that her claims for both past due and ongoing alimony were barred by laches.[1] The court additionally found that Husband had not proven by a preponderance of the evidence that Wife had continuously cohabitated with another man within the meaning of S.C.Code Ann. § 20–3–150. Wife and Husband each appealed from the trial court's ruling.

The case was certified to this Court from the court of appeals pursuant to Rule 204(b), SCACR. The parties raise the following issues for review:

 I. Did the family court err in dismissing Wife's claims to enforce her alimony award based on the doctrine of laches? (Wife's issue on appeal)

 II. Did the family court err in failing to terminate alimony because Wife had continuously cohabitated with another man for a period of ninety or more consecutive days? (Husband's issue on appeal)

### STANDARD OF REVIEW

■ In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *Wooten v. Wooten*, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). This broad scope of review does not require the reviewing court to disregard the findings of the family court; appellate courts should be mindful that the family court, who saw and heard the witnesses, sits in a better position to evaluate credibility and assign comparative weight to the testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

### LAW/ANALYSIS

### I. Laches

Wife argues that the family court erred in dismissing her claims to enforce her alimony award based on the doctrine of laches. We agree.

---

1. Although Husband only asserted that laches barred Wife's claims for past due alimony, the order of the family court decreed that laches barred Wife's claims for both past due and ongoing alimony.

Laches is an equitable doctrine defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Hallums v. Hallums,* 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988). In order to establish laches as a defense, a defendant must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the defendant. *Kelley v. Kelley,* 368 S.C. 602, 606, 629 S.E.2d 388, 391 (Ct.App.2006).

On previous occasions, this Court has alluded to the inapplicability of the defense of laches in actions to enforce a court order. In *Jefferson Pilot Life Insurance Co. v. Gum,* 302 S.C. 8, 393 S.E.2d 180 (1990), Husband was required pursuant to a 1974 divorce decree to name Wife # 1 as the beneficiary of his life insurance policy. *Id.* at 9, 393 S.E.2d at 181. In 1976, Wife # 1 learned Husband had changed the beneficiary to Wife # 2 and thereafter, Wife # 1 obtained several court orders to reinstitute herself as the beneficiary of the policy, the final order to this effect being issued in 1980. Despite these proceedings, Wife # 1 was aware that Husband never designated her as beneficiary. After Husband's death in 1987, Wife # 1 and Wife # 2 both brought claims seeking the insurance policy proceeds. The trial court granted Wife # 2's motion for summary judgment based on the doctrine of laches. *Id.* at 9–10, 393 S.E.2d at 181.

On appeal, this Court found that because there had been no modification to the court's order designating Wife # 1 as the beneficiary, Husband was "still under an obligation" by order of the court to designate her as such. *Id.* at 11, 393 S.E.2d at 182. Therefore, the Court held that the trial court erred in granting summary judgment based on laches to Wife # 2. *Id.* at 12, 393 S.E.2d at 182.

In our opinion, this Court's reasoning in *Jefferson Pilot* is equally applicable to a family court award of alimony. Although the equitable nature of laches generally comports with the family court's equitable jurisdiction in determining support and maintenance between former spouses, the concept of "inexcusable delay" in the laches defense is inconsistent with the judicial authority inherent in a court order. Because court orders awarding support and maintenance do not have

an expiration date, allowing a party to avoid compliance based solely on the oblique notion of delay only serves to undermine the authority of the court. *See also Stephens v. Hamrick,* 86 N.C.App. 556, 358 S.E.2d 547, 549 (1987) (holding that the doctrine of laches does not bar the enforcement of a court order for child support because "the obligation to furnish support is continuous [and therefore] a lapse of time will not be a bar to commencement of an enforcement action."). Accordingly, we hold that laches is not a defense to a claim for the enforcement of an alimony award and that therefore, the family court erred in applying laches as a defense to both Wife's claim for past due alimony and Wife's claim for ongoing alimony.[2]

In holding as we do today, we do not seek to limit the concept of fairness underlying actions in equity. Instead, we believe that a court's focus in deciding an issue related to the enforcement of an alimony obligation should be on the equity of enforcing the court order rather than the general application of equitable defenses. In this context, we find that the theory of equitable estoppel appropriately balances principles of equity and judicial authority when the underlying facts of a case call into question the equity of enforcing a court order.

The essential elements of equitable estoppel are divided between the estopped party and the party claiming estoppel. *Kelley,* 368 S.C. at 608, 629 S.E.2d at 392. The elements of equitable estoppel as related to the party being estopped are: (1) conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party

---

**2.** Recently, the court of appeals determined in *Kelley v. Kelley,* 368 S.C. 602, 629 S.E.2d 388, that the doctrine of laches only acts to bar a spouse's claim for past due alimony payments, but will not apply to bar a claim for future alimony payments. *Id.* at 606 n. 2, 629 S.E.2d at 391 n. 2. Our opinion today vacates this portion of *Kelley.*

estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped. *Boyd v. Bellsouth Tel. Tel. Co., Inc.*, 369 S.C. 410, 422, 633 S.E.2d 136, 142 (2006). As the elements exhibit, equitable estoppel is based on affirmative conduct between the parties. In our opinion, contesting the enforcement of a court order based on the affirmative conduct of the parties is less offensive to judicial authority than the emphasis on the *lack of* conduct by a party inherent in the defense of laches. Accordingly, we hold that equitable estoppel is the appropriate defense to an action for the enforcement of a court order for support and maintenance.

Turning to the instant case, we recognize that affirmative defenses to a cause of action in any pleading must generally be asserted in a party's responsive pleading. *Wright v. Craft*, 372 S.C. 1, 20–21, 640 S.E.2d 486, 497 (Ct.App.2006) (quoting Rule 12, SCRCP). Therefore, because Husband only asserted laches as an affirmative defense, the question of whether Wife is equitably estopped from enforcing past due alimony is not squarely preserved in the instant case. *See id.* (noting that an issue must have been raised to and ruled upon by the trial court to be preserved for review). Noting the equitable foundation of this case, we next consider whether a decision by this Court on the merits of equitable estoppel is appropriate under these circumstances.

Laches is an equitable doctrine which arises upon the failure to assert a known right. *Emery v. Smith*, 361 S.C. 207, 215, 603 S.E.2d 598, 602 (Ct.App.2004). The equitable doctrine of laches is equivalent to the legal doctrine of waiver, which is the "voluntary and intentional relinquishment or abandonment of a known right," *Parker v. Parker*, 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994). Both laches and waiver require a party to have known of a right, and known that the party was abandoning that right.

The doctrine of equitable estoppel may be enforced in a court of law as well as in equity matters. *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992). Often confused with waiver, equitable estoppel focuses on a party's detrimental reliance on another party's conduct while a waiver analysis focuses on a party's "unequivocal intent to relinquish a known

right." 7 S.C. Jur. *Estoppel and Waiver* § 17 (1991). Nevertheless, this Court has acknowledged that "the distinction between waiver and estoppel is close, and sometimes the doctrines merge into each other with almost imperceptible gradations." *Parker,* 313 S.C. at 487, 443 S.E.2d at 391 (quoting *Janasik,* 307 S.C. at 344, 415 S.E.2d at 388).

Given their derivation from the legal doctrine of waiver, we note that the doctrines of laches and equitable estoppel may be similarly indistinct at times. For example, one who delays unreasonably could be said to be estopped from asserting a claim if another has relied on that delay to his detriment. *See* 7 S.C. Jur. *Estoppel and Waiver* § 28. Thus, it is possible to assert only one of these equitable defenses—yet have successfully pled both.

■ In the instant case, we find this precise scenario to have occurred. As it is argued in the pleadings and briefs, Husband's laches defense is virtually indistinguishable from an equitable estoppel defense—the underlying concept of waiver being the essence of Husband's argument. Therefore, regardless of the "laches" title assigned to his argument, we find that equity demands that this Court consider whether Wife is equitably estopped from pursuing her claim for past due alimony. *See also* Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

■ Turning to the merits, we find that Wife's claim for past due alimony is barred under the doctrine of equitable estoppel. Beginning as early as 1990, Wife's conduct conveyed the impression that she was willing to accept alimony in an amount different from that articulated in the 1988 divorce decree. Wife accepted Husband's $300 monthly alimony payments for seven years and further testified that she agreed on [$300 per month] as long as I could make my other payments—because he was trying to get straightened out. Furthermore, Wife pursued no alimony—other than a single request in July 1998 [3]—when Husband's monthly payments

---

3. Wife requested $500 for home renovations.

altogether ceased, testifying that at that time, "I told him as long as I could make it that I would not go after him."

Furthermore, Wife intended Husband to rely on her actions and assertions. Wife's communication with Husband and use of the court system early on indicate that she was clearly aware of Husband's financial situation as well as the procedure for modification or enforcement of the alimony award. Wife herself initiated the claim which resulted in the 1992 consent order for Husband's alimony payments to be made directly to Wife and for the arrears to be "worked out between the parties." Later in 1992, Wife went so far as to initiate a claim to reduce the amount of alimony to $500 per month.[4] In our opinion, the trial court correctly determined that between 1990 and 2004, Wife "by her actions, and her inactions, lulled [Husband] into thinking they had resolved the issue between themselves and that he did not need to take any actions to protect himself by attempting to have the Court reduce or terminate his alimony."

Moreover, other than her 1990 contempt action for alimony in arrears, Husband had no indication that Wife was dissatisfied with the parties' own terms of alimony. In light of Wife's 1992 court appearances, Husband justifiably relied on Wife's assertions that she did not need alimony on the terms ordered by the divorce decree. Specifically, the consent order for the parties to settle the issue of arrears themselves, and Wife's subsequent initiation of a claim to significantly reduce alimony to an amount closer to that which Husband was actually paying at the time, gave Husband no reason to believe that he either needed to seek modification of alimony in light of his financial situation or ultimately face accountability for the entire amount dating back to the 1988 divorce decree.

Lastly, Husband was prejudiced in relying on Wife's assurances that the parties had settled all issues related to alimony. The facts show, and the trial court correctly found, that Husband would not have incurred substantial farm debt begin-

---

4. Wife apparently initiated the claim and had Husband sign an affidavit saying he agreed to the modification of alimony. When Husband did not appear at the hearing, Wife withdrew the claim. Husband's undisputed testimony was that Wife led him to believe that his only responsibility in the matter was to sign the affidavit, and further, that he never received notice of the hearing.

ning in 2004 if he had known he would ultimately be responsible for the full amount of his alimony obligation.

Although Husband's almost immediate failure to adhere to the divorce decree, or at the very least seek a modification of alimony at that time, is unacceptable, Wife's assurances and reassurances that Husband need only pay what he could justifiably resulted in Husband's belief that his past due alimony obligations had been settled between them. Accordingly, we hold that Wife is equitably estopped from bringing a claim for enforcement of past due alimony against Husband.[5]

## II. Continuous cohabitation as a bar to alimony

Husband argues that the family court erred in failing to find that Wife was no longer entitled to alimony because she had continuously cohabited with another man for the last seven years. We disagree.

S.C.Code Ann. § 20-3-150 provides that permanent alimony and support requirements of a supporting spouse will terminate "upon the remarriage or continued cohabitation of the supported spouse." Unless another meaning has been agreed to in writing, § 20-3-150 defines "continued cohabitation" as when:

> the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days.... [or] there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

 If a statute's language is plain, unambiguous, and conveys a clear meaning, then the rules of statutory interpretation are not needed and a court has no right to impose another meaning. *Vaughan v. McLeod Reg'l Med. Ctr.*, 372 S.C. 505, 510, 642 S.E.2d 744, 747 (2007). The words must be given their plain and ordinary meaning without resorting to

---

**5.** Given that Husband only asserted that laches barred Wife's claims for past due alimony, we do not consider whether Wife is equitably estopped from enforcing the alimony obligation on a going-forward basis. For this reason, we vacate the portion of the trial court's decision holding that Wife's claim for ongoing alimony is barred by laches.

subtle or forced construction which limit or expand the statute's operation. *Id.*

Although neither party disputes that Wife has been in a "romantic relationship" for more than seven years, Husband attempts to bypass the statute's other requirements for termination of alimony by refusing to interpret the phrase "resides with another person" on its face. We find that the phrase "resides with" in the context of § 20–3–150 sets forth a requirement that the supported spouse live under the same roof as the person with whom they are romantically involved for at least ninety consecutive days. Any other interpretation essentially takes the "cohabitation" out of "continued cohabitation." Because Husband admits that Wife and her boyfriend do not live together in this fashion, and further, does not contend that their living arrangement is an attempt to circumvent the statute, Husband has not shown that Wife's relationship with another man amounts to "continued cohabitation" under § 20–3–150. Accordingly, we affirm the family court's refusal to terminate Husband's ongoing alimony obligation under § 20–3–150.

### Conclusion

For the foregoing reasons, we hold that laches is not a defense to claims for either past due or ongoing alimony. Rather, we hold that equitable estoppel is the appropriate defense to the enforcement of a court order for support and maintenance. We therefore affirm the decision of the family court dismissing Wife's claim for past due alimony on the modified grounds that Wife is equitably estopped from collecting alimony in arrears. As to ongoing alimony, we vacate the decision of the family court finding laches barred Wife's claim for ongoing alimony and affirm the family court's refusal to terminate ongoing alimony pursuant to the continuous cohabitation statute.

MOORE, BURNETT, JJ., and Acting Justice J. MICHAEL BAXLEY, concur. PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I concur in the majority's disposition of this appeal, but write separately because the fact the obligation sought to be

enforced arises by virtue of a court order does not, in my opinion, preclude a plea of laches. While I appreciate the majority's sensitivity to the dignity of court orders, I do not see that interposing either laches or equitable estoppel in any way undermines a court's authority. These bars lie to prevent a party from enforcing a stale order, while the court's authority is vindicated through its contempt powers. Further, I do not agree with the application of equitable estoppel to these facts. The former husband was aware from the May 1992 consent order that he was obligated to pay his former wife $1200/month alimony and to make up arrearages as the parties agreed, and was aware that for many years his former wife had accepted less alimony than she was entitled to under this order. Assuming his former wife meant for him to believe that she was satisfied with the underpayments when she in fact was not, and assuming he relied upon her "false representation," this does not change his actual or constructive knowledge of the "true facts": he had, for years, failed to meet his court-ordered alimony obligation.

I would affirm the family court order barring the request for alimony arrearages on the ground of laches, affirm the refusal to terminate alimony under the "continual habitation" statute, and reverse the order barring future alimony payments on the ground of laches.