749 S.E.2d 119

Bonnie L. McKINNEY, f/k/a Bonnie L. Pedery, Respondent,

v.

Frank J. PEDERY, Appellant.

Appellate Case No. 2011–200487.

No. 5165.

Court of Appeals of South Carolina.

Heard May 9, 2013.

Decided Aug. 14, 2013.

Rehearing Denied Oct. 30, 2013.

2

Kenneth C. Porter, of Porter & Rosenfeld, of Greenville, for Appellant.

Kim R. Varner, of Varner & Segura, and J. Falkner Wilkes, both of Greenville, for Respondent.

WILLIAMS, J.

In this appeal from the family court, Frank Pedery (Husband) claims the family court improperly terminated Bonnie McKinney's (Wife) requirement to pay Husband permanent periodic alimony when the court found that Husband continuously cohabitated with his paramour in contravention of section 20–3–130(B)(1) of the South Carolina Code (Supp.2012). In addition, Husband contends the family court erred in failing to award Husband attorney's fees. We affirm.

**FACTS**

Husband and Wife divorced on May 3, 2006. In the family court's final order, it approved an agreement entered into by Husband and Wife, wherein Wife agreed to pay Husband $1,500 per month in permanent periodic alimony. Three years later, Wife sought a modification or termination of her alimony obligation based on a substantial change of circumstances, which included the following: (1) a decrease in Wife's income by 40%; (2) a deterioration in Wife's health; (3) Husband's continued cohabitation with his paramour; and (4) an increase in Husband's income by virtue of Husband's live-in paramour.

At the hearing on May 11, 2011, Wife called several witnesses to testify on her behalf. Tim Greaves, a licensed private investigator, testified in support of Wife's allegations that Husband was cohabitating with his live-in paramour, Cynthia Hamby. Greaves stated he monitored Husband's house twice a day for a period of seven months starting in January 2009. Greaves stated that Hamby lived in Husband's house. Greaves testified Hamby would commute to Duncan, South Carolina, every Monday morning and remain in Duncan

until Wednesday afternoon, at which time she would return to Husband's house. While in Duncan, Hamby cared for her grandchildren.

Greaves also observed the interior of Husband's house during this time [1] and stated Hamby's toiletries [2] occupied the bathroom and her clothing filled a substantial portion of the master bedroom closet. Greaves observed the couple spending significant time together outside Husband's house and stated Husband would pay for their groceries. He also testified that Husband and Hamby listed their status as "engaged" on Facebook prior to Wife filing her complaint but immediately changed it to "in a relationship" once litigation commenced.

When questioned about Husband's living arrangements, Wife stated she received a phone call from Husband's mother in January 2009. At that point, Wife began driving by their former marital home almost every day. During this time, she observed Hamby's vehicle parked outside Husband's house Wednesday through Monday mornings, which prompted her to hire a private investigator.

In response, Husband testified Hamby only stayed overnight on the weekends but lived with her son in Duncan throughout the week. When questioned as to why Hamby's clothing and toiletries were throughout Husband's house, he stated Hamby kept articles in both his house and her son's house because she traveled back and forth between the two houses. Husband admitted Hamby currently had her own key to his house as well as a key to Husband's car but claimed he gave them to her when he was hospitalized earlier that year. He also stated that, in the past, he would purchase their groceries, but now Hamby helps buy groceries and contributes by driving Husband around and helping clean the house. Regarding the parties' finances, Husband stated he was unemployed and was currently receiving full-time disability. Without alimony, Husband testified he would be unable to support himself.

---

1. During litigation, Husband placed his house on the market. Greaves saw the interior of Husband's house when it was for sale.

2. Greaves testified he observed numerous female products, including: a woman's wig, hand lotion, curlers, hair products, make-up, feminine hygiene products, fingernail polish, mirrors, and hair bows.

William Hall and Clarence Sharpe also corroborated Wife's claim that her alimony should be reduced or terminated. Hall, a direct competitor with Wife in the trucking insurance industry, stated that beginning in 2008, the competition to insure trucks increased dramatically because many trucking companies were going out of business, which forced those in their industry to cut insurance rates and become much less profitable. Sharpe, Wife's manager, testified similarly. Sharpe stated that the increase in competition caused insurance rates, and correspondingly, commissions for selling policies, to fall dramatically. In addition, their company decreased the premium payouts by 5% to employees. Although Sharpe did not testify to Wife's decrease in salary, he stated his salary had decreased by 50% in the previous three to four years on account of the economy.

In support of Wife's claims, she testified that at the time of the parties' divorce, she netted approximately $14,000 per month. However, her income started to decrease in 2007 because of the economic downturn. Specifically, Wife showed her yearly earnings were as follows: $230,121 in 2007; $191,700 in 2008; $128,871 in 2009; and $119,605 in 2010. Wife also stated that her health had declined since she and Husband divorced and highlighted her issues with diabetes, high blood pressure, arthritis, osteoporosis, and lupus.

After considering all the testimony and evidence, the family court issued an order on August 26, 2011. In its order, the family court recounted the witnesses' testimonies at the hearing and concluded Wife was entitled to have her alimony obligation terminated. Citing to section 20–3–130(B) of the South Carolina Code, the family court terminated alimony, finding Husband, as the supported spouse, resided with a romantic partner on a continuous basis for greater than ninety days. Despite Hamby's absence from their residence to care for her grandchildren, the family court determined Husband and Hamby continuously resided together for the requisite ninety days. Specifically, the family court found Hamby's trips to Duncan to care for her grandchildren were akin to out-of-town travel for work and could not be used to circumvent the intent of the statute. Although Husband claimed Hamby maintained a separate residence in Duncan, the family court noted she never removed any of her personal property

from Husband's house. The family court also found Husband's testimony was not wholly credible. As a result of the foregoing, the family court terminated Husband's alimony and declined to award either party attorney's fees. This appeal followed.

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In appeals from the family court, the appellate court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "De novo review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the [family] court's findings." *Lewis*, 392 S.C. at 390, 709 S.E.2d at 654–55. However, this broad standard of review does not require the appellate court to disregard the factual findings of the family court or ignore the fact that the family court is in the better position to assess the credibility of the witnesses. *Pinckney v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). Moreover, the appellant is not relieved of the burden of demonstrating error in the family court's findings of fact. *Id.* at 387–88, 544 S.E.2d at 623. Accordingly, we will affirm the decision of the family court unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by this court. *See Lewis*, 392 S.C. at 390, 709 S.E.2d at 654–55.

## LAW/ANALYSIS

### 1. Termination of Alimony

Husband first contends that the family court improperly terminated Wife's alimony obligation. We disagree.

### a. Two–Issue Rule

In Wife's brief, she claims this court should affirm the family court's decision outright because Husband failed to appeal the family court's alternative rulings. Specifically, Wife contends the family court found Wife's decreased income and deteriorating health were substantial changes in circum-

stances sufficient to merit termination of Wife's alimony obligation pursuant to section 20–3–130(B)(1) of the South Carolina Code. We disagree.

■ Pursuant to the two-issue rule, "whe[n] a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become law of the case." *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010).

Although we agree that Wife's decrease in income and health issues could constitute a substantial change in circumstances, based on our review of the order, we find the family court did not rule on these issues. The order devotes several pages to recounting the testimony of Wife and her witnesses as it relates to Wife's income, the economic downturn that affected her income, and Wife's health issues. In addition, Wife's complaint clearly sets forth these grounds as reasons to decrease or terminate her alimony obligation to Husband. However, the family court never found these circumstances merited termination of Wife's alimony obligation. Instead, the family court's findings were solely limited to whether Husband and Hamby continuously cohabitated as defined by section 20–3–130. Moreover, Husband specifically requested the family court rule on these issues in his Rule 59(e), SCRCP, motion, which the family court denied without a hearing or separate order. As such, we hold the two-issue rule does not bar consideration of Husband's argument on appeal.

### b. On the Merits

■ Section 20–3–130(B)(1) provides that permanent alimony and support shall terminate "on the remarriage or continued cohabitation of the supported spouse." Unless otherwise agreed to in writing,

"continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days. The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

§ 20–3–130(B). The supreme court further defined "resides with" in the context of continued cohabitation as "the requirement that the supported spouse *live under the same roof* as the person with whom they are romantically involved for at least ninety consecutive days." *Strickland v. Strickland,* 375 S.C. 76, 89, 650 S.E.2d 465, 472 (2007) (emphasis added).[3]

Husband concedes he and Hamby are involved in a romantic relationship. However, Husband claims Hamby does not live with Husband and her routine weekend stays and occasional overnight visits are not equivalent to continued cohabitation, particularly when Wife presented no evidence the two periodically separated to circumvent the ninety-day requirement of section 20–3–130. We disagree and find Wife presented sufficient evidence to terminate Husband's alimony.

Wife's private investigator testified Hamby and Husband behaved as husband and wife. The investigator observed Hamby and Husband spending five out of seven nights every week together at Husband's house for a period of at least seven months. We find the private investigator's extensive documentation and testimony regarding Husband and Hamby's living arrangements support our conclusion that they shared a home on a continuous and uninterrupted basis for substantially longer than ninety days. Although both parties agree Hamby left Husband's house every week to care for her grandchildren, we hold Hamby's departure was more akin to a temporary absence for out-of-town travel than it was to routine separation based on separate residences. Further, for the reasons set forth below, we disagree with the dissent's view that Hamby's caring for her grandchildren prevented a

---

**3.** We note that in *Strickland,* the supreme court defined "continued cohabitation" in the context of section 20–3–150 of the South Carolina Code (Supp.2012) as when the supported former spouse "resides with" another person in a romantic relationship for a period of ninety or more consecutive days. 375 S.C. at 89, 650 S.E.2d at 472. Section 20–3–150 provides for the segregation of allowances between the supported spouse and his or her children and states that permanent alimony and support requirements of a supporting spouse will terminate "upon the remarriage or continued cohabitation of the supported spouse." Because the family court terminated Husband's alimony under section 20–3–130 and the definition of "continued cohabitation" is the same in sections 20–3–130 and 20–3–150, we reference only section 20–3–130 for purposes of this appeal.

finding of continued residence for at least ninety consecutive days as required by section 20–1–130.[4]

Wife submitted evidence Hamby kept all of her personal belongings at Husband's residence, including her clothing, undergarments, shoes, and toiletries. Husband's testimony that Hamby only packed an "overnight" bag when she traveled to Duncan to care for her grandchildren lends support for the conclusion that Hamby "lived under the same roof" as Husband. Further, Husband admitted that he gave Hamby an engagement ring and that Hamby's relationship status was listed as "engaged" on Facebook prior to Wife filing for termination of alimony. We are not persuaded by Husband subsequently referring to Hamby's engagement ring as a "friendship ring"[5] or by Hamby changing her relationship status from "engaged" to "in a relationship" immediately following Wife's initiation of this action. Rather, this is evidence of Husband's attempt to downplay their relationship and living arrangements, which we find unconvincing.

While Husband cites to several cases in which our courts found the moving party failed to establish the supported spouse continually cohabitated with another person as contemplated by section 20–3–130, we find each of these cases readily distinguishable from the instant case. *See Eason v. Eason*, 384 S.C. 473, 482, 682 S.E.2d 804, 808 (2009) (finding no bar to alimony when ex-wife and boyfriend may have resided together for periods of two to four weeks but never for a continuous period of ninety days and several witnesses testified ex-wife stayed with them during the ninety days and did not want to

---

4. The dissent also notes that Wife failed to show Hamby's caring for her grandchildren was an intentional attempt to evade the statute's ninety-day requirement. Because we find Wife established Hamby and Husband continuously cohabited for a period greater than ninety days, neither the family court nor this court need reach the issue of whether Husband and Hamby intentionally separated to circumvent the statute. *See* § 20–1–130(B) ("The court may [also] determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of *less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement*.") (emphasis added).

5. Husband also called it a "friendship ring." Counsel for Wife asked, "Did you buy [Hamby] a wedding ring? Engagement ring?" Hamby responded, "Yes. It's a friendship ring."

stay with boyfriend on a full-time basis); *Biggins v. Burdette*, 392 S.C. 241, 245–46, 708 S.E.2d 237, 239 (Ct.App.2011), (finding termination of alimony not warranted when boyfriend maintained his own residence, kept most of his personal belongings at his residence, and routinely left when visitors stayed with supported spouse); *Fiddie v. Fiddie*, 384 S.C. 120, 126, 681 S.E.2d 42, 45 (Ct.App.2009) (holding ex-wife did not continually cohabitate with a man when she lived with him sometimes but also stayed with her sister and friend several days each month so as to not "wear out her welcome"); *Feldman v. Feldman*, 380 S.C. 538, 544, 670 S.E.2d 669, 671–72 (Ct.App.2008) (affirming family court's finding of no continued cohabitation when ex-wife and boyfriend were not observed living together for ninety days and when ex-wife's friends and family testified she lived alone); *Semken v. Semken*, 379 S.C. 71, 77, 664 S.E.2d 493, 497 (Ct.App.2008) (reversing family court's termination of alimony because evidence did not demonstrate ex-wife and boyfriend lived under the same roof for ninety consecutive days).

Additionally, to conclude the parties did not continuously cohabitate for at least ninety consecutive days because of Hamby's routine travel to care for her grandchildren in Duncan would run afoul of the legislative intent underpinning this section. To interpret this section as Husband advances would allow *any* break in the ninety days to defeat a continuous cohabitation argument, rendering this section virtually unenforceable. For example, any time a paramour and supported spouse are briefly away from each other, whether it be for an out-of-town work trip, an overnight hospital stay, or for a weekend vacation, the family court would be prohibited from applying this section. We do not believe the Legislature intended for such a result. *See Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention."); *cf. Gasque v. Gasque*, 246 S.C. 423, 427, 143 S.E.2d 811, 812 (1965) (concluding a husband's temporary absence from South Carolina solely because of his employment did not render him a nonresident within the meaning of the divorce laws in the absence of clear

proof of an intent to abandon his old residence and acquire a new one). Rather, the dispositive question is whether the paramour and supported spouse continuously *reside* together for the requisite ninety-day period such that the family court could conclude they are "living under the same roof" for purposes of section 20–3–130. *See generally* S.C.Code Ann. § 59–112–10 (2004)

("The word 'residence' or 'reside' shall mean continuous and permanent physical presence within this State, provided, that temporary absences for short periods of time shall not affect the establishment of a residence."); S.C.Code Ann. § 63–9–30 (2010) (" 'South Carolina resident' means a person who has established a true, fixed principal residence and place of habitation in this State, and who intends to remain or expects to return upon leaving without establishing residence in another state. Temporary absences for short periods of time do not affect the establishment of residency."); S.C.Code Ann. § 63–17–2910 (2010) (" 'Home state' means the state in which a child lived with a parent or a person acting as parent for at least six consecutive months immediately preceding the time of filing of a petition or comparable pleading for support and, if a child is less than six months old, the state in which the child lived from birth with any of them. A period of temporary absence of any of them is counted as part of the six-month or other period."). Given the aforementioned facts, we find Husband and Hamby's living arrangements, despite Hamby's temporary absences, amount to "continued cohabitation" under section 20–3–130. Accordingly, we affirm the family court's decision to terminate Wife's alimony obligation on this ground.

## 2. Attorney's Fees

Next, Husband contends the family court erred when it failed to award him attorney's fees. We disagree.

An award of attorney's fees and costs is a discretionary matter not to be overturned absent an abuse of discretion by the family court. *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). To award attorney's fees, the family court should consider several factors, including: (1) ability of the party to pay the fees; (2) beneficial results obtained; (3) financial conditions of the parties; and (4) the effect a fee award will have on the party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

The family court denied both parties' requests for attorney's fees on the grounds that Wife prevailed in the action.[6] We find the family court properly exercised its discretion. Although Wife has the superior ability to pay attorney's fees, Husband's conduct brought the parties into court. We find it would be inequitable to require Wife to pay his fees in this instance, particularly when she prevailed on the merits. Additionally, Wife incurred greater fees and costs in bringing this action and was earning substantially less on the date of the hearing than when the parties divorced. Furthermore, Husband receives monthly disability income, and although the termination of alimony will cause his income to decrease, he has failed to prove he will be unable to pay his fees. *See Gainey v. Gainey*, 279 S.C. 68, 70, 301 S.E.2d 763, 764 (1983) (finding party requesting attorney's fees has burden to prove entitlement to fees and costs). Accordingly, we affirm the family court's decision on this issue.

## CONCLUSION

Based on the foregoing, the family court's decision is **AFFIRMED.**

HUFF, J., concurs.

KONDUROS, J., dissents in a separate opinion.

KONDUROS, J., dissenting.

Respectfully, I disagree with the majority regarding the termination of Husband's alimony on the basis of continued cohabitation with Hamby. According to the plain language of the statute, Wife must demonstrate by a preponderance of the evidence Husband and Hamby resided together for a period of at least ninety consecutive days or establish they separated

---

**6.** We note the family court should have made specific findings of fact on the record relating to each factor from *E.D.M. See Griffith v. Griffith*, 332 S.C. 630, 646, 506 S.E.2d 526, 534–35 (Ct.App.1998) (citing Rule 26(a), SCRFC, and highlighting requirement of family court to make specific findings of fact on the record about each of the required factors from *E.D.M.*, but noting the appellate court may make its own findings of fact in accordance with the preponderance of the evidence if the record is sufficient). However, because Husband never raised this deficiency in his brief, and our review of the facts based on the preponderance of the evidence leads us to the same conclusion, we find it is appropriate to affirm the family court's denial of attorney's fees.

with the intent to circumvent the ninety-day requirement. *See* S.C.Code Ann. § 20–3–130(B) (Supp.2012). In this case, the record establishes Hamby lived with her son prior to her becoming romantically involved with Husband. After that, the record shows that for a period of time, she spent approximately four to five nights per week at Husband's home and the remaining nights at her son's home, where she had her own room and aided in caring for her grandchildren. This was a regular occurrence every week, demonstrating the normal course of the parties' relationship. Caring for her grandchildren was an activity Hamby engaged in prior to her relationship with Husband and was not shown to be an evasive response to the statute, which requires a showing of intent. Therefore, in my opinion, the preponderance of the evidence does not support a finding that Husband and Hamby continually resided together for a period of at least ninety consecutive days or that Husband and Hamby separated to avoid the termination of his alimony. Furthermore, I would remand the decision of attorney's fees to the family court for reconsideration, factoring in Husband's prevailing on the continued cohabitation issue.