664 S.E.2d 493

**Francis M. SEMKEN, Respondent,**

v.

**Catherine A. SEMKEN, Appellant.**

**No. 4424.**

Court of Appeals of South Carolina.

Heard June 3, 2008.
Decided July 8, 2008.

72

J. Mark Taylor, of W. Columbia, Jane Nussbaum Douglas and Natalie P. Bluestein, of Charleston, for Appellant.

Gregory A. DeLuca, of Goose Creek, J. Michael Taylor, of Columbia, for Respondent.

WILLIAMS, J.:

In this family law action, Catherine Semken (Wife) appeals the family court's order terminating Francis Semken's (Husband) obligation to pay Wife alimony, awarding Husband reimbursement alimony, and requiring Wife to pay Husband's attorney's fees and costs. We reverse and remand.

## FACTS

Husband and Wife divorced in 1999. Pursuant to the final order, Husband was required to pay Wife permanent periodic alimony in the amount of $1,000 per month. In 2005, Husband brought an action to have his alimony obligation terminated pursuant to the continued cohabitation provision of section 20–3–130(B)(1) of the South Carolina Code (Supp.2007), claiming Wife and Thomas McGill (Boyfriend) had engaged in a romantic relationship and resided together for a period of more than ninety consecutive days. Wife and Boyfriend did not deny the romantic relationship, but both disputed the claim of cohabitation.

In support of Husband's assertion, he presented evidence to show Wife rented a house owned by Boyfriend in Berkeley County, South Carolina from January 2002 through July 2005. During this period, Boyfriend lived in separate residences in other counties in the state. Wife and Boyfriend acknowledged they were involved in a romantic relationship during this time period, and it was likely that over the course of their three-year relationship the couple spent more than ninety non-consecutive days together in the Berkeley County residence.

Although Wife paid Boyfriend $500 per month in rent, Wife and Boyfriend never entered into a written lease agreement. Boyfriend's mortgage payment on the residence during this time period ranged from $550 to $625 per month, but in exchange for the lesser rent, Wife did not have full access to the house. Boyfriend stored some of his belongings in one of the bedrooms of the house and kept a car in the garage.

When Wife began renting the Berkeley County residence from Boyfriend, she transferred all the utility bills into her

name and made all of the payments. Boyfriend did not pay any of Wife's expenses or help her financially, although he would occasionally allow Wife to pay rent late or in installments. Boyfriend continued to pay insurance on the Berkeley County residence and its contents while Wife resided there, and he never changed the status on his homeowner's insurance policy from owner-occupied to rental-property. Wife did not have any insurance on her belongings in the residence.

When Wife moved into the Berkeley County residence, Boyfriend moved to North Augusta due to his employment. Boyfriend obtained a new driver's license reflecting his North Augusta address, and he registered to vote in Aiken County, South Carolina. However, when Boyfriend later renewed his vehicle tag, he used the Berkeley County residence address and, pursuant to the "Motor Voter" system, his voter registration was automatically reinstated in Berkeley County.

After a year in North Augusta, Boyfriend moved to Newberry County and began operating a business out of this residence. Subsequently, Boyfriend moved to Lexington County, which is where Boyfriend was living at the time he and Wife ended their romantic relationship. Following their break-up, Boyfriend allowed Wife to stay in the Berkeley County residence rent-free for the three months prior to her moving out because she lost her job and could not afford to pay rent.

Upon hearing the evidence, the family court found Husband had carried his burden of proof to show Wife and Boyfriend engaged in continued cohabitation for more than ninety days pursuant to § 20-3-130(B)(1). The family court interpreted § 20-3-130(B)(1) by applying the ordinary meaning to the word "reside" and found during their romantic relationship, Boyfriend maintained two residences, one of which was the Berkeley County residence. The family court stated, "It is clear that [Boyfriend] has not spent every night and day for [more] than 90 consecutive days with [Wife] at the Berkeley County home address but that is not what the statute requires. The statute only requires that [Boyfriend] 'reside' there at the same time with [Wife]." The family court further found despite Wife and Boyfriend not spending more than ninety consecutive days and nights under the same roof, "they

both claimed the Berkeley County home as a residence at the same time, spent a considerable amount of time together, were romantically involved, and claimed the same home as a residence." The family court additionally stated, "It is critical to this decision to note that if [Wife] had moved into an apartment owned by someone else (or even an identified rental property owned by [Boyfriend]) rather than one of [Boyfriend's] 'residences,' there would have been a different outcome."

Based on these findings, the family court terminated Husband's obligation to pay Wife alimony. The family court further ordered Wife to reimburse Husband for the alimony payments made from November 2005 through July 2006. Additionally, the family court required Wife to pay $10,000 towards Husband's attorney's fees. This appeal follows.

## STANDARD OF REVIEW

"On appeal from the family court, this [C]ourt has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence." *Henggeler v. Hanson,* 333 S.C. 598, 601–02, 510 S.E.2d 722, 724 (Ct.App.1998). A preponderance of the evidence stated simply is that evidence which convinces as to its truth. *Frazier v. Frazier,* 228 S.C. 149, 168, 89 S.E.2d 225, 235 (1955). Despite this broad scope of review, this Court is not required to disregard the family court's findings. *Doe v. Roe,* 369 S.C. 351, 359, 631 S.E.2d 317, 321 (Ct.App.2006). This Court remains mindful the family court saw and heard the witnesses, placing it in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

### I. Termination of Alimony Pursuant to § 20–3–130(B)(1)

Wife begins by arguing the family court erred in finding Wife engaged in continued cohabitation with Boyfriend and, therefore, erred in terminating alimony. We agree.

Section 20–3–130(B)(1) allows for the termination of periodic alimony upon "the remarriage or continued cohabitation of the supported spouse...." The statute states:

For purposes of this subsection and unless otherwise agreed to in writing by the parties, "continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days. The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

§ 20–3–130(B).

The South Carolina Supreme Court recently addressed the issue of terminating a husband's alimony obligation due to the wife's continued cohabitation with another man pursuant to section 20–3–150 of the South Carolina Code (Supp.2007). Section 20–3–150 calls for any award of alimony to the spouse retaining custody of the couple's children to cease upon the remarriage or continued cohabitation of the supported spouse. Section 20–3–150 further states:

For purposes of this subsection and unless otherwise agreed to in writing by the parties, "continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days. The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

When interpreting this language, the South Carolina Supreme Court found "the phrase 'resides with' ... sets forth a requirement that the supported spouse *live under the same roof* as the person with whom they are romantically involved for at least ninety consecutive days." *Strickland v. Strickland*, 375 S.C. 76, 89, 650 S.E.2d 465, 472 (2007) (emphasis added). The Supreme Court reasoned that "[a]ny other interpretation essentially takes the 'cohabitation' out of 'continued cohabitation.'" *Id.*

The statute in question in the current case, § 20–3–130(B)(1), contains the same language as § 20–3–150 defining

"continued cohabitation." Thus, the Supreme Court's interpretation of that language controls this Court's determination of whether Wife and Boyfriend engaged in continued cohabitation for ninety or more consecutive days.

In the case at hand, the family court addressed the meaning of "continued cohabitation" prior to the Supreme Court's decision in *Strickland,* focusing on the definition of "residence." The family court stated it was applying the ordinary meaning of the word "reside" to the statute.

Applying this interpretation to Wife and Boyfriend's situation, the family court found Boyfriend "maintained two residences" during their relationship, one of which was the Berkeley County home where Wife resided. The family court stated, "It is clear that [Boyfriend] has not spent every night and day for [more] than 90 consecutive days with [Wife] at the Berkeley County home address but that is not what the statute requires. The statute only requires that [Boyfriend] 'reside' at the same time with [Wife]." The family court further emphasized this interpretation by stating,

[E]ven though [Wife] and [Boyfriend] did not spend more than 90 consecutive days and nights under the same roof, it is clear that they both claimed the Berkeley County home as a residence at the same time.... It is critical to this decision to note that if [Wife] had moved into an apartment owned by someone else (or even an identified rental property owned by [Boyfriend]) rather than one of [Boyfriend's] "residences," there would have been a different outcome.

The Supreme Court applied a meaning to the phrase "continued cohabitation" that requires the spouse and the paramour to actually "live under the same roof" for ninety consecutive days, rather then merely claim the same residence for that time period. *Strickland,* 375 S.C. at 89, 650 S.E.2d at 472. The family court specifically found Wife and Boyfriend did not live under the same roof for ninety consecutive days. Further, the family court made no findings that Wife and Boyfriend periodically separated in order to circumvent the ninety-day requirement, and the facts do not warrant such a finding.

The evidence demonstrates Wife and Boyfriend were romantically involved but did not engage in continued cohabita-

tion, as defined by *Strickland,* during their relationship. The evidence shows Boyfriend did not live in under the same roof as Wife for ninety consecutive days. Pursuant to *Strickland,* Husband has not proven that Wife's relationship with Boyfriend amounts to "continued cohabitation" under § 20–3–130(B)(1). We, therefore, reverse the family court's termination of alimony and reinstate Husband's alimony obligation.

■ Because we find Husband's alimony obligation was incorrectly terminated, Wife must be restored to the position she was in before the family court's judgment was rendered. *See Brown v. Brown,* 286 S.C. 56, 57, 331 S.E.2d 793, 793–94 (Ct.App.1985) ("Generally, reversal of a judgment on appeal has the effect of vacating the judgment and leaving the case standing as if no such judgment had been rendered."). "[W]hen a judgment reducing support payments is reversed on appeal, the parties are placed in the same position as if no reduction had been ordered and the supporting spouse is liable for arrearages from the date of the reduction to the date of reversal." *Id.* at 57–58, 331 S.E.2d at 794. Husband is, therefore, liable for any amount of alimony he did not pay as a consequence of the family court's ruling. We remand the issue of arrearages to the family court for a determination of the monetary amount owed to Wife, as well as a determination of an appropriate payment schedule for Husband to follow.

## II. Termination of Alimony Pursuant to Additional Sustaining Ground

■ Husband argues even if this Court finds the statutory requirements of § 20–3–130(B)(1) have not been satisfied, an alternate sustaining ground exists to terminate Husband's alimony obligation. Husband specifically argues Wife's relationship with Boyfriend was tantamount to marriage, warranting a termination of alimony due to a change in Wife's circumstances. We decline to address this issue.

■■ As the prevailing party in the family court, a respondent may raise an additional sustaining ground for this Court to consider. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000). This Court, however, may ignore any such arguments, especially if the additional ground was not presented to the family court. *Id.* at 421, 526

S.E.2d at 724. "[T]he current rules do not impose any presentation requirement. However, the failure to present an additional sustaining ground to the [family] court reduces the likelihood an appellate court will rely on it to affirm a judgment." *Id.* at 421 n. 11, 526 S.E.2d at 724 n. 11.

In the family court, Husband stated he sought to have his alimony obligation terminated based solely on the statutory ground found in § 20-3-130(B)(1). The parties never mentioned or discussed terminating alimony based on the common law argument of Wife's relationship with Boyfriend being tantamount to marriage. This argument is being raised for the first time in this appeal. Although South Carolina court rules allow Husband as the prevailing party to initially raise this additional sustaining ground in his appeal, we decline to rely on this ground as a means of affirming the family court's order, as we find it would be unfair to Wife because this argument was not presented to the family court.

### III. Reimbursement of Alimony

Because we find alimony should not be terminated, Wife must be restored to the position she was in before the family court's judgment was rendered. *See Brown,* 286 S.C. at 57, 331 S.E.2d at 793-94 ("Generally, reversal of a judgment on appeal has the effect of vacating the judgment and leaving the case standing as if no such judgment had been rendered."). Consequently, Wife should not be ordered to reimburse Husband for any alimony payments made while the action was pending.[1] Therefore, consistent with this opinion, we reverse the family court's order for reimbursement.

### IV. Attorney's Fees

Finally, Wife argues the family court erred in ordering her to contribute to Husband's attorney's fees. Wife also argues the family court erred in failing to order Husband to contribute towards her attorney's fees. In light of our decision to reverse the family court's termination of Husband's alimony obligation, we similarly reverse the award of attorney's fees

---

1. After terminating Husband's alimony obligation, the family court ordered Wife to reimburse Husband for alimony payments made from November 15, 2005, through July 15, 2006, which totaled $9,450.

80

and remand the issue for reconsideration. *See Sexton v. Sexton,* 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993) (reversing and remanding issue of attorney's fees for reconsideration when the substantive results achieved by trial counsel were reversed on appeal).

### CONCLUSION

Based on the foregoing, the family court's decision is **REVERSED and REMANDED.**

THOMAS and PIEPER, JJ., concur.