681 S.E.2d 42

**Walter M. FIDDIE, Appellant,**

v.

**Dianna FIDDIE, Respondent.**

No. 4567.

Court of Appeals of South Carolina.

Heard March 5, 2009.

Decided June 16, 2009.

Rehearing Denied Aug. 25, 2009.

---

122

William J. Clifford, of Charleston, for Appellant.

Susan T. Kinard, of Mt. Pleasant, for Respondent.

LOCKEMY, J.:

In this domestic action, Walter Fiddie (Husband) appeals the family court's refusal to terminate alimony and its order increasing alimony to Diane Fiddie (Wife). Husband argues the family court misapplied certain equitable maxims. Additionally, Husband argues the family court erred in awarding attorney's fees and costs to Wife and failing to award attorney's fees and costs to him. Finally, Husband argues the family court erred in finding Wife a credible witness and in finding the errors he made in his financial declarations were more than "simple errors." We affirm.

## FACTS/PROCEDURAL BACKGROUND

Husband and Wife were married on June 6, 1966, and had two children. After twenty-seven years of marriage, in 1994, the parties were divorced on the ground of one year's continuous separation. In its divorce order, the family court approved an agreement entered into by Husband and Wife. Under the terms of their agreement, Husband was obligated to pay Wife $250 per month in permanent alimony until her death or remarriage. A provision in their agreement provided Wife's alimony would increase to $400 when their youngest child "complet[ed] college of highest education he desire[d]." Additionally, pursuant to their agreement, Husband agreed to pay Wife "one half of any retirement, up to the date the parties are divorced, as it becomes available." In 2002, the family court increased Husband's monthly alimony to $675 after Wife petitioned the family court for an increase.

On July 19, 2005, Husband petitioned the family court to terminate his alimony obligation based on Wife's continued cohabitation with another man, Ronald Robinson. Additionally, Husband requested reasonable attorney's fees and costs. Subsequently, Husband filed an amended complaint on January 18, 2006, essentially making the same allegations. Wife answered Husband's complaint, counterclaimed for an increase in alimony, and also sought attorney's fees and costs.

At trial evidence demonstrated Wife could not afford the home she purchased and has had to live with friends and relatives. At one time she lived in a substandard house with inadequate plumbing and only a partial roof. She had finan-

cial troubles, and on occasion did not have enough money for food. Additionally, Wife's health was deteriorating, and she could not afford health insurance or prescription medication. Because of her health problems, she appeared unable to work.

After striking up a friendship with Ronald Robinson, Wife moved in with him in his North Myrtle Beach apartment from August 2004 until October 2005 "as a roommate." While living with him, Wife helped Robinson with his business, and he provided her financial support. Both insisted they were not engaged in a "romantic relationship," though they admitted having consensual sex approximately three times. Additionally, Wife maintains she would spend time with a friend at least twice a month and with her sister once a month so that she was not staying with Robinson on a full-time basis. When the present action began, Wife was living in an apartment in Charleston, and Robinson was helping pay her rent.

The family court refused to terminate Husband's alimony obligation based on his continued cohabitation allegation. The family court found the evidence presented did not prove Wife lived with Robinson for ninety consecutive days or that Robinson and Wife were involved in a romantic relationship. After finding a substantial change in Husband and Wife's circumstances, the family court increased Husband's alimony obligation to $1,200 per month. Finally, the court directed Husband pay $10,000 of Wife's attorney's fees and costs. Husband filed a motion to alter or amend judgment which the family court denied. This appeal follows.

## STANDARD OF REVIEW

On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly*, 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994). Although this court may find facts in accordance with our own view of the preponderance of the evidence, we are not required to ignore the fact that the trial court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Marquez v. Caudill*, 376 S.C. 229, 239, 656 S.E.2d 737, 742 (2008). However, "[q]uestions concerning alimony rest with

the sound discretion of the [family] court, whose conclusions will not be disturbed absent a showing of abuse of discretion." *Kelley v. Kelley,* 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct.App.1996).

## LAW/ANALYSIS

### I. Termination based on Cohabitation

 Husband argues the family court erred in failing to terminate alimony based on Wife's cohabitation with another man. Specifically, Husband contends Wife's relationship triggered both the common law grounds for terminating alimony as well as the statutory grounds. We affirm the family court's determination that Wife did not meet the statutory grounds for termination of alimony under the continued cohabitation statute and its determination that Wife's living arrangement with Robinson was not tantamount to marriage.

### A. Continued Cohabitation Statute

Under section 20–3–150 of the South Carolina Code (Supp. 2008), a supporting spouse's permanent alimony and support obligations will terminate "upon the remarriage or continued cohabitation of the supported spouse...." Section 20–3–150 defines "continued cohabitation" to mean "the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days." Furthermore, the continued cohabitation statute provides: "The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement." Recently, our supreme court found "resides with," under the statute requires "the supported spouse live under the same roof as the person with whom they are romantically involved for at least ninety consecutive days." *Strickland v. Strickland,* 375 S.C. 76, 89, 650 S.E.2d 465, 472 (2007); *see also Semken v. Semken,* 379 S.C. 71, 74, 664 S.E.2d 493, 495 (Ct.App.2008).

Therefore, the threshold question before us is whether Wife lived under the same roof as Robinson for at least ninety consecutive days in a romantic relationship. Here, the family

court found uncontroverted evidence demonstrated Wife stayed with at least three people other than Robinson every month in question. Accordingly, the family court found Husband failed to prove Wife and Robinson resided together in a romantic relationship for ninety or more consecutive days. Under the preponderance of the evidence, the family court found evidence presented did not meet the statutory guidelines for termination of Husband's alimony.

■ Regarding whether Wife resided with Robinson for ninety consecutive days, we defer to the family court's judgment. Testimony in the record demonstrates Wife did not want to stay with Robinson on a full-time basis and that she hated wearing out her welcome anywhere she went. Additionally, testimony from Wife's sister and friend corroborated Wife's testimony that she stayed with them for several days each month. Accordingly, because this issue seems to be a credibility determination, we give deference to the family court which heard the testimony and made a credibility determination.[1] *See Marquez v. Caudill,* 376 S.C. 229, 239, 656 S.E.2d 737, 742 (2008). We also find Wife did not stay with her sister and friend in an attempt to circumvent the continued cohabitation statute because evidence demonstrates she was unaware of the statute until the litigation began and thus the potential consequences of cohabitating with another.

## B. Tantamount to Marriage

■ Husband maintains the family court erred in failing to terminate his alimony because Wife's relationship with Robinson was tantamount to marriage. We disagree and find the cases Husband relies on distinguishable from the present case.

Husband relies on *Bryson v. Bryson,* 347 S.C. 221, 224, 553 S.E.2d 493, 495 (Ct.App.2001), where this court found ex-Wife's relationship tantamount to marriage after she lived with another man for twelve years, moved to Florida with him, purchased a home with him, and had the home titled in both

---

1. Because we find Wife did not stay with Robinson on a full-time basis, we decline to comment on whether she and Robinson were in a "romantic relationship." *See* S.C.Code Ann. § 20–3–150 (requiring both residence with another for ninety consecutive days and a romantic relationship for a continued cohabitation finding).

their names, among other factors. Unlike *Bryson,* where ex-wife's relationship with another man was permanent in nature, here, Wife resided with Robinson as a temporary solution to her homelessness. From the record, it appears both understood the temporary nature of her residence with him. We also believe the present case is different from *Jeanes v. Jeanes,* 255 S.C. 161, 177 S.E.2d 537 (1970), where the supreme court found the ex-Wife and paramour entered into a common law marriage because the couple resided together and held themselves out to be husband and wife. Here, we believe Wife and Robinson held themselves out to be friends rather than husband and wife. Accordingly, due to the temporary nature of Wife and Robinson's living arrangement as well as their holding themselves out as friends, we find the family court did not err in refusing to terminate his alimony obligation based on Husband's argument that Wife's relationship with Robinson was tantamount to marriage.

## II. Increase in Alimony/Changed Circumstances

Husband contends the family court erred in finding a change of circumstances warranted an increase in Wife's alimony. Husband admits his financial situation has improved since the parties' divorce; however, he maintains his increase in income alone should not be the basis for an alimony increase. We disagree.

■■ Upon a change in circumstances, the family court may modify an alimony obligation. *See Miles v. Miles,* 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct.App.2003). To justify modification or termination of an alimony award, the changes in circumstances must be substantial or material. *Id.* at 519, 586 S.E.2d at 140. Moreover, the change in circumstances must be unanticipated. *Penny v. Green,* 357 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct.App.2004). "The party seeking modification has the burden to show by a preponderance of the evidence that the unforeseen change has occurred." *Kelley v. Kelley,* 324 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct.App.1996).

■■ "Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and

the supporting spouse's ability to continue to support the other spouse.[2]" *Miles,* 355 S.C. at 519, 586 S.E.2d at 140. Here, the family court based this modification partly on Husband's improved financial condition. The family court noted Husband was earning $100,000 per year over his retirement annuity, while he was earning only $38,000 per year without retirement income when the parties last appeared before the court in 2002. At the time of this proceeding, Husband's income exceeded his expenses by more than $4,000. Further, the family court found Husband intentionally filed false financial declarations with the court, and but for Wife's counsel's cross-examination, his financials would have misled the court.

In addition to noting Husband's improved change of circumstances, the family court also considered Wife's current circumstances. The family court noted Wife is unemployed and suffers from multiple ailments including fibromyalgia, severe osteoporosis, osteoarthritis, migraine headaches, hypertension, and severe depression "such that she is unable to work." Additionally, the family court noted Wife has no health insurance to aid her in obtaining prescriptions and doctor's visits. Finally, the family court found Wife's insufficient income and declining health eventually led to homelessness. Therefore, the family court increased Wife's alimony to $1,200 per month.

We find Wife met her burden of proving an unforeseen change in circumstances occurred based on her declining health, her homelessness, and her inability to work. Wife's changes in her health and financial conditions are significant. Further, though normal increases in income may not be enough to warrant an increase in alimony, here, Husband's change in financial situation is material enough to warrant an

---

**2.** Per statute, the complete list of factors the family court can consider in setting alimony include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2008).

increase in his alimony obligation considering he is making more than double his income from 2002. Accordingly, the family court did not abuse its discretion by increasing alimony based on Husband's improved financial situation together with Wife's diminished standard of living. Therefore, we affirm the family court's decision to increase Husband's alimony obligation.

## III. Other Issues

Husband's other issues on appeal are abandoned because he cited no authority and makes conclusory assertions. *Bryson v. Bryson,* 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct.App.2008) (holding an issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority); *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct.App.2004) ("Numerous cases have held that where an issue is not argued within the body of the brief but is only a short conclusory statement, it is abandoned on appeal.").

## CONCLUSION

We find the family court did not err in refusing to terminate Wife's alimony under the continued cohabitation statute because evidence did not demonstrate Wife stayed with Robinson for ninety consecutive days. This issue, in large part, came down to a credibility determination, and we gave deference to the family court which heard the testimony. We also do not find Wife's relationship with Robinson was tantamount to marriage. Additionally, we affirm the family court's decision to increase Husband's alimony obligation based on unforeseen changes in both Wife and Husband's circumstances. All other issues raised to this court are abandoned on appeal. The decision of the family court is therefore

**AFFIRMED.**

HEARN, C.J., and PIEPER, J., concur.