# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Bonnie L. McKinney, f/k/a Bonnie L. Pedery,
Respondent,

v.

Frank J. Pedery, Petitioner.

Appellate Case No. 2013-002601

------------

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

------------

Appeal From Greenville County
Billy A. Tunstall, Jr., Family Court Judge

------------

Opinion No. 27567
Heard May 7, 2015 – Filed August 26, 2015

------------

## REVERSED AND REMANDED

------------

Kenneth C. Porter, of Porter & Rosenfeld, of Greenville,
for Petitioner.

Kim R. Varner, of Varner & Segura, and J. Falkner
Wilkes, both of Greenville, for Respondent .

------------

**CHIEF JUSTICE TOAL:** Petitioner Frank J. Pedery argues the court of appeals
erred in affirming the family court's termination of Respondent Bonnie

McKinney's alimony obligation to him and the family court's failure to award Pedery attorney's fees. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Pedery and McKinney divorced on May 3, 2006. In the family court's final order granting the divorce, the family court approved an agreement entered into by Pedery and McKinney, wherein McKinney agreed to pay Pedery permanent periodic alimony of $1,500 per month. In June 2009, McKinney sought a reduction or termination of her alimony obligation based on Pedery's continued cohabitation with his paramour, Cynthia Hamby, and a substantial change of circumstances. *See* S.C. Code Ann. § 20-3-130(B)(1) (Supp. 2012) (providing that periodic alimony terminates upon the "continued cohabitation of the supported spouse" and is "terminable and modifiable based upon changed circumstances occurring in the future"). According to McKinney, a decrease in her income and deterioration of her health constituted the substantial change in circumstances.

The family court held a hearing on May 11, 2011. At the hearing, McKinney called a private investigator, Tim Greaves, as a witness to testify in support of her allegation that Pedery was cohabitating with Hamby. Greaves testified that he monitored Pedery's house in Mauldin, South Carolina, daily from January until June, 2009. According to Greaves, during that time, Hamby typically stayed at Pedery's house from Wednesday afternoon until Monday morning of each week. Greaves testified that on Monday mornings, Hamby commuted to Duncan, South Carolina, where she worked as a nanny for her grandchildren until Wednesday afternoons.

Greaves testified that inside Pedery's house,[1] Hamby's toiletries and "feminine items" such as curling irons occupied the bathroom, and the master bedroom closet held women's clothing.[2] Further, Greaves observed Pedery and Hamby buying groceries together, and it appeared that Pedery paid for the groceries.

Pedery testified that he began a relationship with Hamby in 2007 or 2008. When Pedery met Hamby, she lived with her son in Duncan, and also worked there

---

[1] Greaves gained access to the house when Pedery listed the house for sale.

[2] Pedery acknowledged that at least some of the items belonged to Hamby.

as a nanny for her grandchildren, as she still did at the time of the hearing. Pedery testified that Hamby began spending nights with him approximately six or eight months after they began seeing each other. According to Pedery, Hamby "lives" with her son, where she has a room of her own, and only "visits" Pedery at his house. Pedery stated that Hamby leaves her possessions in both places, and when she leaves Pedery's house to go to her son's house, she packs a "little overnight bag" containing underwear.

At the hearing, McKinney offered the testimony of her manager at work—Franklin Sharp, as well as that of an employee of a direct competitor—William Hall—to corroborate her claim that her alimony should be reduced or terminated as a result of her decrease in income. Hall, the direct competitor's employee, testified that beginning in 2008, the competition in their field of work—insuring trucks—increased, and forced businesses to lower insurance rates. Although Sharp did not testify as to McKinney's salary, he testified that because of the increase in competition, his own salary had decreased by fifty percent in the previous three or four years. McKinney testified that her income had decreased from $230,121 in 2007 to $119,605 in 2010. McKinney further stated that her health had declined since the divorce, and that she suffers from high blood pressure, diabetes, arthritis, osteoporosis, and lupus.

On August 26, 2011, the family court issued an order terminating McKinney's alimony obligation based on its finding that Pedery "continuously resided with [Hamby] for not only in excess of ninety days but on a continuous basis for an extended period of time . . . ." As for Hamby's absences from Pedery's house, the family court found that they "were a requirement of [her] job and that [Pedery] was not attempting to use them to circumvent the intent of the law . . . ." Therefore, the family court found that "any absences from her residence is in the line of her job and do not constitute a stop of the residency . . . ." Because McKinney prevailed, the family court found that neither party was entitled to attorney's fees.

The court of appeals affirmed the family court's order. *McKinney v. Pedery*, 406 S.C. 1, 12, 749 S.E.2d 119, 125 (Ct. App. 2013). The court of appeals found that Pedery and Hamby "shared a home on a continuous and uninterrupted basis for substantially longer than ninety days," and then held that "Hamby's departure was more akin to a temporary absence for out-of-town travel than it was to routine separation based on separate residences." *Id.* at 8, 749 S.E.2d at 123. The court of appeals reasoned that

to conclude the parties did not continuously cohabitate for at least ninety consecutive days because of Hamby's routine travel to care for her grandchildren in Duncan would run afoul of the legislative intent underpinning this section. To interpret this section as Pedery advances would allow *any* break in the ninety days to defeat a continuous cohabitation argument, rendering this section virtually unenforceable. For example, any time a paramour and supported spouse are briefly away from each other, whether it be for an out-of-town work trip, an overnight hospital stay, or for a weekend vacation, the family court would be prohibited from applying this section. We do not believe the Legislature intended for such a result.

*Id.* at 10–11, 749 S.E.2d at 124 (internal citations omitted).

Therefore, the court found that Pedery and Hamby's living arrangements amounted to "continued cohabitation" under section 20-3-130(B) of the South Carolina Code. *Id.* at 11, 749 S.E.2d at 125. Further, the court of appeals affirmed the family court's decision to deny Pedery's request for attorney's fees. *Id.* at 11–12, 749 S.E.2d at 125.

Judge Konduros dissented on the ground that the statutory requirements of section 20-3-130(B) were not satisfied under the plain language of the statute. *Id.* at 12–13, 749 S.E.2d at 125–26 (Konduros, J., dissenting). Judge Konduros pointed out that Hamby lived with her son prior to becoming romantically involved with Pedery and still had her own room there, and she spent approximately four to five nights per week at Pedery's house—a course of conduct which was a regular occurrence every week. *Id.* (Konduros, J., dissenting). In Judge Konduros's view, this evidence did not support a finding that Pedery and Hamby continually resided together for at least ninety consecutive days or that they separated to avoid the termination of his alimony. *Id.* at 13, 749 S.E.2d at 126 (Konduros, J., dissenting).

This Court granted Pedery's petition for writ of certiorari to review the court of appeals' opinion pursuant to Rule 242, SCACR.

## ISSUES PRESENTED

I.      Whether the court of appeals erred in affirming the family court's termination of Pedery's alimony based on its finding that

Pedery continuously cohabitated with his paramour under section 20-3-130(B) of the South Carolina Code?

II.    Whether the court of appeals erred in affirming the family court's decision to decline to award Pedery attorney's fees?

## STANDARD OF REVIEW

"In appeals from the family court, this Court reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414–15, 709 S.E.2d 666, 667 (2011). To that end, an appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Dickert v. Dickert*, 387 S.C. 1, 5–6, 691 S.E.2d 448, 450 (2010). "'However, this broad scope of review does not require this Court to disregard the findings of the family court,'" as the family court "was in a superior position to make credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 384–85, 709 S.E.2d 650, 651–52 (2011) (quoting *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)).

"Questions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion." *Eason*, 384 S.C. at 479, 682 S.E.2d at 807 (citing *Degenhart v. Burriss*, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct. App. 2004)). An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support. *Id.*

## LAW/ANALYSIS

### I.    Section 20-3-130(B)(1)

Where the family court has previously awarded periodic alimony, the periodic alimony terminates "on the remarriage or continued cohabitation of the supported spouse" and is "terminable and modifiable based upon changed circumstances occurring in the future." S.C. Code Ann. § 20-3-130(B)(1). The family court may terminate or modify the award based upon changed circumstances when there is a substantial or material change in circumstances, such as changes in a party's health or income. S.C. Code Ann. § 20-3-130(B)(1); *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997).

According to McKinney, her periodic alimony obligation to Pedery should be terminated based upon both Pedery's continued cohabitation with Hamby as well as a change in McKinney's circumstances.

### a. Continuous Cohabitation

### i. Ninety or More Consecutive Days

Pedery argues that McKinney failed to meet her burden of proof with regard to her argument that Pedery continuously cohabitated with Hamby for purposes of section 20-3-130(B). We agree.

Under section 20-3-130(B)(1) of the South Carolina Code, periodic alimony terminates on the "continued cohabitation of the supported spouse." S.C. Code Ann. § 20-3-130(B)(1). The party seeking modification has the burden to show by the preponderance of the evidence that a change has occurred. *Miles v. Miles*, 393 S.C. 111, 120, 711 S.E.2d 880, 885 (2011); *Cartee v. Cartee*, 295 S.C. 103, 104, 366 S.E.2d 269, 269 (Ct. App. 1988) (quoting *Boney v. Boney*, 289 S.C. 596, 597, 347 S.E.2d 890, 891 (Ct. App. 1986)); *see Feldman v. Feldman*, 380 S.C. 538, 670 S.E.2d 669 (Ct. App. 2008) (finding that testimony produced at trial supported the family court's conclusion that the husband failed to carry his burden of proof that the wife continuously cohabitated with her boyfriend under section 20-3-130(B)).

For purposes of section 20-3-130, "continued cohabitation means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days." S.C. Code Ann. § 20-3-130(B). We further defined "continuous cohabitation" in *Strickland v. Strickland*, 375 S.C. 76, 650 S.E.2d 465 (2007), stating that within this context, the term "resides with" "sets forth a requirement that the supported spouse *live under the same roof* as the person with whom they are romantically involved for at least ninety consecutive days." *Id.* at 89, 650 S.E.2d at 472 (emphasis added). As we stated, "[a]ny other interpretation essentially takes the 'cohabitation' out of 'continued cohabitation.'" *Id.*

This Court and the court of appeals have applied *Strickland's* rationale in several cases. *See Eason v. Eason*, 384 S.C. 473, 682 S.E.2d 804 (2009); *Biggins v. Burdette*, 392 S.C. 241, 708 S.E.2d 237 (Ct. App. 2011); *Fiddie v. Fiddie*, 384 S.C. 120, 681 S.E.2d 42 (Ct. App. 2009); *Feldman*, 380 S.C. at 538; 670 S.E.2d at 669; *Semken v. Semken*, 379 S.C. 71, 664 S.E.2d 493 (Ct. App. 2008).

These cases demonstrate that since *Strickland*, this Court and the court of appeals have strictly interpreted the language of section 20-3-130(B). For example, in *Biggins v. Burdette*, the wife and her boyfriend spent approximately sixty nights together during their relationship; however the wife spent the night apart from him on several occasions, including when various family members visited and when she traveled out of town to care for her ailing mother. 392 S.C. at 243, 708 S.E.2d at 238. The court of appeals affirmed the family court's denial of the husband's motion to terminate alimony based on continued cohabitation because: the wife and her boyfriend testified that they did not spend ninety consecutive nights together; the boyfriend maintained his own residence where he kept most of his personal items; and the private investigator confirmed that they merely spent the night together on a recurring basis,. *Id.* at 245, 708 S.E.2d at 239; *see also Fiddie*, 384 S.C. at 124, 681 S.E.2d at 44 (upholding the family court's refusal to terminate a husband's alimony obligation where the husband contended that the wife continuously cohabitated with a male friend, but the wife maintained that she spent time with a friend at least twice a month and with her sister once a month so that she did not stay full-time with her male friend, and thus, "wear out her welcome").

Similarly, in *Eason*, the husband argued that the family court erred in not terminating the wife's alimony based on continuous cohabitation with her boyfriend. 384 S.C. at 482, 682 S.E.2d at 808. While the wife and her boyfriend admitted that they had lived together at times, they never cohabitated for more than two to four weeks at a time—a contention supported by other testimony at trial. *Id.* Therefore, citing the language in *Strickland*, we affirmed the family court's finding that the wife was not barred from receiving alimony based on continuous cohabitation with her boyfriend. 384 S.C. at 482, 682 S.E.2d at 808.

*Semken v. Semken* involves facts similar to the present case. In *Semken*, the husband sought to terminate his obligation to pay permanent periodic alimony because he claimed that the wife had resided with her boyfriend for more than ninety consecutive days. 379 S.C. at 73, 664 S.E.2d at 495. In that case, the wife lived in one of her boyfriend's residences, paying him $500 per month in rent. *Id.* The boyfriend stored some of his belongings in the house and kept a car in the garage. *Id.* Although the family court found that the boyfriend maintained two residences—one of which was where the wife resided—and found that the wife and boyfriend had not spent every night together for more than ninety consecutive days, the family court terminated the husband's alimony obligation. *See id.* at 77, 664 S.E.2d at 497. The family court reasoned that the wife and her boyfriend

resided together because both claimed the same home as a residence at the same time. *See id.*

The court of appeals reversed, finding that while the wife and her boyfriend were romantically involved, they did not engage in continuous cohabitation as defined by *Strickland*. *Id.* at 77–78, 664 S.E.2d at 497. According to the court of appeals, the evidence showed that the boyfriend did not live under the same roof as the wife for ninety consecutive days, and therefore, the wife's relationship with her boyfriend did not amount to "continuous cohabitation" under *Strickland*. *See id.*

Here, because McKinney sought termination of her alimony obligation to Pedery, she bore the burden to show by a preponderance of the evidence that Hamby resided with Pedery for at least ninety days. *See Miles*, 393 S.C. at 120, 711 S.E.2d at 885; *Cartee*, 295 S.C. at 104, 366 S.E.2d at 269 (quoting *Boney*, 289 S.C. at 597, 347 S.E.2d at 891). We find that McKinney did not satisfy that burden; accordingly, the family court should have denied her motion for termination of her alimony obligation.

We do not deny that the facts indicate that Pedery and Hamby's living situation is a permanent arrangement of a romantic nature. Rather, we focus on the specific requirement under the plain language of section 20-3-130(B). If the statute merely required the supported spouse to "reside with" his paramour, then termination of McKinney's alimony obligation would be proper. However, the statute mandates cohabitation for ninety *consecutive* days.

The evidence presented at the hearing indicates that Hamby maintained two residences during the time in question. Before she began a relationship with Pedery, she lived in Duncan with her son, and apparently maintained a residence there even after she began seeing Pedery. For us to conclude that Hamby's only actual residence was with Pedery—arguably leading to the conclusion that she resided with Pedery for ninety or more days for purposes of section 20-3-130(B)— McKinney would have needed to show that Hamby had completely relocated from her son's house in Duncan to Pedery's house. McKinney presented no such evidence. Instead, according to Pedery's testimony, Hamby maintained enough possessions in Duncan such that she took only an overnight bag with her when she went from Pedery's house to her son's house in Duncan.

During the time in question, Hamby lived at her son's house in Duncan approximately two days of every week, which means that under a literal

interpretation of the statute, Pedery and Hamby could not have lived "under the same roof" for ninety consecutive days. *See Strickland*, 375 S.C. at 89, 650 S.E.2d at 472. Like the court of appeals found in *Semken*, the statute's ninety-day requirement—as interpreted in *Strickland*—controls any claim that residence was established in a particular place.

The court of appeals essentially proclaimed a new definition under the statute when it considered whether Pedery and Hamby "shared a home on a continuous and uninterrupted basis for substantially longer than ninety days." *See McKinney*, 406 S.C. at 9, 749 S.E.2d at 123. This definition is not consistent with *Strickland* and the plain language of section 20-3-130(B). Additionally, the court of appeals did not support its "holding" that Hamby's weekly departure from Pedery's house "was more akin to a temporary absence for out-of-town travel than it was to routine separation based on separate residences" with any authority, and this analysis does not further the inquiry required by the statutory test. *See id.* at 8, 749 S.E.2d at 123. Similarly, McKinney's interpretation of the statute would remove the word "consecutive" from the statute and would classify Hamby's time away from Pedery's house each week as analogous to work-related travel. However, neither McKinney's nor the court of appeals' interpretation is faithful to the language of the statute.

If we were to uphold the court of appeals' analysis, our decision would render section 20-3-130(B) a nullity.[3] The language of the statute is clear and unambiguous. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (citations omitted)). Therefore, because the ninety-day requirement under the plain language of the statute is not satisfied, we reverse the court of appeals' decision upholding the family court's termination of McKinney's alimony obligation.

---

[3] We agree with the concurrence that the plain language of the statute makes it almost impossible for a family court to find continued cohabitation for purposes of section 20-3-130(B) and therefore terminate a supported spouse's alimony award. Regardless, the language of the statute is a choice made by the Legislature and creates a result to which we are confined, as the plain meaning of section 20-3-130(B) cannot accord with the so-called "common sense application" of the statute.

## ii.    Exception to Section 20-3-130(B)

The family court may also find "that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement."  S.C. Code Ann. § 20-3-130(B).[4]

The family court found that Hamby's absences from Pedery's house were "being used deliberately and intentionally because there was never any removal of her property to the other location and she returned on a regular basis . . . ."  Similarly, the family court stated that "any absence[] from [Pedery's house] is in the line of her job and do[es] not constitute a stop in her residence and that the use of this at trial is clearly to circumvent the statute."

In contrast, we find that McKinney presented no evidence that Pedery and Hamby periodically stayed apart from each other before the litigation began[5] to circumvent the ninety-day requirement of section 20-3-130(B).  According to Pedery's testimony, Hamby worked as a nanny for her grandchildren and lived with her son in Duncan prior to her relationship with Pedery,[6] indicating that Hamby's travel to Duncan was unrelated to the ninety-day requirement of section 20-3-130(B).  Therefore, we find that Pedery and Hamby's weekly separation as a result of her work in Duncan did not amount to a separation intended to circumvent the ninety-day requirement of section 20-3-130(B).

---

[4] Because the court of appeals found that McKinney established that Hamby and Pedery continuously cohabitated for longer than ninety days, it did not reach this issue.  *See McKinney*, 406 S.C. at 9, 749 S.E.2d at 123.

[5] Pedery acknowledged that after the litigation began, Hamby began staying at his house only on weekend nights.

[6] While the family court found that Pedery's testimony was not wholly credible, the family court based that finding on the fact that "he did not bring [Hamby] to the hearing to substantiate any of the allegations"—reasoning which we find unpersuasive.  Nevertheless, there was no testimony to refute Pedery's testimony on this point, and Greaves actually observed Hamby caring for children while she was in Duncan.

### b. Change in Circumstances - Two Issue Rule

According to McKinney, the family court found that she suffered a substantial change in circumstances because of a decrease in her earnings and a decline in her health. Therefore, McKinney contends that because Pedery did not appeal the family court's finding on this issue, under the two issue rule, we should affirm the family court's termination of her alimony obligation because the change in circumstances is an additional sustaining ground for the family court's termination of alimony. *See Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) ("Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case."). We disagree.

As the court of appeals recognized, the family court did not find that McKinney's changed circumstances supported its decision terminating alimony, and therefore, did not rule on this issue. Instead, the family court merely made factual findings summarizing the testimony presented at the hearing regarding the economic downturn that affected McKinney's change in income and McKinney's health problems.

We find that the testimony in the record concerning McKinney's changed income and health issues could support, at least, a reduction in McKinney's alimony obligation. Therefore we remand the case for the family court to determine whether McKinney's alimony obligation should be reduced or terminated on the basis of a change in circumstances in her health and income.

### II.    Attorney's Fees

Finally, Pedery argues that if we reverse the court of appeals' decision, we should hold that the family court erred in failing to award Pedery attorney's fees.

In considering whether to award attorney's fees, a family court should consider the following factors:  (1) the party's ability to pay his or her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (citation omitted). The family court's decision regarding attorney's fees and costs is a discretionary matter not to be overturned absent an

abuse of discretion. *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989) (citations omitted).

"Our case law and court rules make clear that when a contract or statute authorizes an award of attorney's fees, the trial court must make specific findings of fact on the record for each of the required factors to be considered." *Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 534–35 (Ct. App. 1998) (citing Rule 26(a), SCRFC; *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 427 S.E.2d 659 (1993); *Atkinson v. Atkinson,* 279 S.C. 454, 309 S.E.2d 14 (Ct. App. 1983) (per curiam)). If, on appeal, there is inadequate evidentiary support for each of the factors supporting the family court's decision, the appellate court should reverse and remand so the trial court may make specific findings of fact. *Id.* (citing *Blumberg*, 310 S.C. at 492, 427 S.E.2d at 659). However, when a family court issues an order in violation of Rule 26(a), SCRFC, the appellate court "'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Id.* (quoting *Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)).

Because we reverse and remand the court of appeals' decision on the first issue, we also remand the attorney's fees issue for the family court to make specific findings of fact upon its decision on McKinney's alimony obligation. *See Griffith*, 332 S.C. at 646–47, 506 S.E.2d at 534–35 (citations omitted).

## CONCLUSION

Based on the foregoing, we reverse the court of appeals' decision and remand to the family court.

**REVERSED AND REMANDED.**

**PLEICONES and BEATTY, JJ., concur. HEARN, J., concurring in a separate opinion in which KITTREDGE, J., concurs.**

**JUSTICE HEARN**: I concur in the result reached by the majority and in the reasoning to support it. I write separately to express my disagreement with one statement in the majority opinion.

I am cognizant of our rules of statutory construction and agree with the majority that we are confined to a plain-meaning of the statute. However, I part company with the majority in its conclusion that, "If we were to uphold the court of appeals' analysis, our decision would render section 20-3-130(B) a nullity." I find this criticism unwarranted, as I believe the opposite is true. In my opinion, the family court and court of appeals' interpretation attempts to reconcile the language of the statute with the realities of our mobile society. Few people live under the same roof for ninety consecutive days; indeed, I would venture to say that because of their work schedule, none of the members of this Court could be considered to have resided with his or her spouse for ninety consecutive days. While I cannot say that our construction is absurd so as to allow this Court to ignore the plain language, I nevertheless recognize that the practical application of the statute distorts the intent of the General Assembly. As the statute is written, it is virtually impossible to terminate any award of alimony as a result of the continued cohabitation of the supported spouse. Therefore, although I concur with the majority's analysis and ultimate conclusion, I disagree that the court of appeals' common-sense application of the statute would render it a nullity.

**KITTREDGE, J., concurs.**